## MAJESTIC LOAN CO. v. EDMONDSON.

No. 25373.　May 14, 1935.

John S. Robinson, for plaintiff in error.

Hughey Baker, for defendant in error.

PER CURIAM. This appeal presents error from the court of common pleas, Tulsa

county, and was instituted in that court by S. W. Edmondson, as plaintiff, against the Majestic Loan Company, as defendant, to recover usurious interest charged plaintiff by defendant. Jury was waived by the parties and the issues were tried to the court. The court found for plaintiff and defendant appeals. The parties in this appeal will be referred to and designated as plaintiff and defendant, the same as they stood in the trial court.

Plaintiff bases his action upon a second amended petition, in which it is alleged: That defendant was engaged in the business of making salary and chattel loans, and that defendant loaned to plaintiff, between June 16, 1931, and April 15, 1932, the total sum of $545, and that plaintiff repaid to defendant the sum of $663.66, $118.66 of which was interest, and prayed judgment for $200, and $150 against defendant. Defendant in its answer admits that it loaned to plaintiff between June 16, 1931, and April 15, 1932, the sum of $545, but denied that plaintiff repaid to defendant the sum of $663.66, and denied that plaintiff paid to defendant the sum of $118.66 as interest, but alleged that plaintiff paid to defendant for the use of said money, for said period, the sum of $94.50. Defendant further denied that it was at said time indebted to plaintiff in any sum; and further alleged that on April 15, 1932, plaintiff requested that defendant loan plaintiff the sum of $20, but defendant refused to make the loan unless plaintiff would release defendant from any and all claims or causes of action for usury, or any other action that plaintiff at that time had or might have against defendant by reason of certain advancements or loans of money made to plaintiff by defendant, prior to April 15, 1932; that at the time and in consideration of a further loan of money in the amount of $20 to be made by defendant to plaintiff, plaintiff made, executed, and delivered to defendant a release in writing, whereby plaintiff forever released and discharged defendant from all claims or causes of action for usury, or any other action that plaintiff at that time had or might have against defendant by reason of certain advancement or loans of money made to the plaintiff by the defendant prior to April 15, 1932; that after the execution of said release, defendant then loaned to plaintiff the sum of $20, which said sum had been paid to defendant by plaintiff, and that by terms of said release the cause or causes of action by plaintiff had been released and forever

barred, and prayed that plaintiff take nothing and that defendant have judgment against plaintiff for $150 attorney fee. To said answer plaintiff filed an unverified reply, consisting of a general denial, and specifically denied that plaintiff had, on April 15, 1932, executed and delivered to defendant a release as alleged in the answer of defendant; that if the same was in fact ever signed by plaintiff, same was signed in blank without plaintiff being informed or having the opportunity to ascertain what said instrument was, and that same had been obtained by fraud, artifice, and trick, and was obtained only as a scheme, device, and subterfuge to defeat the usury laws of the state; that if such an instrument was in existence, it was without consideration; that plaintiff had no intention of releasing defendant from any liability by reason of charging him usurious interest. Defendant, plaintiff in error, sets forth 14 specifications of error for review by this court, as its grounds for reversal of the judgment of the trial court, but we deem it unnecessary to go into all of them, but deem it only necessary to consider whether or not usury was charged, reserved, and collected by defendant from plaintiff, and if so, did plaintiff release defendant from liability for same?

1. Defendant admitted, in open court, at the commencement of the trial, that plaintiff had borrowed from defendant certain sums of money at various times, and thereafter had repaid to defendant, at various times, in liquidation thereof, certain sums, which by simple mathematical calculation show upon their face that a larger rate of interest was charged, reserved, and collected by defendant from plaintiff than allowed by law, and the court having heard the testimony and having found that defendant had charged plaintiff, upon said transactions, the sum of $100 interest in excess of the amount allowed by law to be charged for the loan of money, we will not disturb the judgment of $200 so found by the court, same being double the amount of usury so charged and collected.

Defendant, however, argues, after its admission that usury had been charged, that before a recovery can be had, it must be first shown that there was a corrupt agreement to pay a usurious rate of interest, between the parties, when the contract was entered into for the loan; that where a note is given at the inception of the transaction for a given sum to be paid at a stated period, drawing a rate of interest not prohibited by law, and has no earmarks of

usury, and upon trial it is shown that the borrower paid to the lender considerably more than the principal and a legal rate of interest for the use of the money, and in the absence of a corrupt agreement entered into when the note was given, that the court should hold that no usury had been charged. We do not think this is the law, and this court has so held in the case of Williams v. Wood, 168 Okla. 547, 36 P. (2d) 948. Defendant in that case made the same contention as is made by defendant in the instant case. This court brushed said defense aside by the following language:

"Knowingly taking, receiving, reserving or charging a rate of interest in excess of the rate permitted by law for loan of money, represented by a promissory note, constitutes usury whether the charging of the unlawful rate of interest appears upon the face of the note or not."

And at page 548, of same opinion, it was also held:

"The note involved did not show upon its face that the usury was being charged. Usurers seldom permit their contracts to show upon their face usurious charges of interest. Many and various shifts and devices are used to cover the unlawful transaction. The trial court properly held that usurious interest had been charged, accepted and received."

Defendant cites and relies upon Clement Mortgage Co. v. Johnston, 83 Okla. 153, 201 P. 247. We have examined that case, and find it does not support defendant's contention. There, as here, the contract itself did not show it to be usurious. There plaintiff requested that he be allowed to pay the note before maturity, and at a time when he was not entitled to pay same under contract. Defendant permitted him to do so, but charged him the full rate of interest under the contract down to date of payment, and an additional ten per cent. interest on the principal note for ten days. This court held that exacting payment of the legal interest which will accrue as a condition to accepting payment of the principal before it is due does not constitute usury. The charge was said to be one for the privilege of terminating the contract rather than compensation allowed for the use, forbearance, or detention of money. There is no such question in the case here under consideration.

2. Having come to the conclusion that usury was charged, reserved, and collected by defendant, we will now consider whether or not a release was given to defendant by plaintiff, releasing defendant from all liability to plaintiff for usury. Plaintiff contended at the trial that if there was a release, it had been signed in blank and left with defendant. In our opinion, such contention does not strengthen the case of plaintiff, as it is well settled and familiar law that if one affixes his signature to a printed blank or bill of exchange or a promissory note, and intrusts it to the custody of another for the purpose of having the blanks filled out, he thereby confers the right and such instrument carries on its face an implied authority to fill out the blanks and complete the contract at pleasure, as to means, terms, and amount, so far as consistent with its printed parts. 3 R. C. L. page 874, paragraph 59; Kassetta v. Baima et al. (Cal. App.) 288 P. 830. The court, however, found that plaintiff gave to defendant a release, and that said release was in same form at the trial as when given. So it must be conceded that a release was given as alleged by defendant. Where there has been a series of transactions between a lender and borrower, all of which were tainted with usury, and the parties decide to terminate their relations, and in doing so, and standing at arms' length, enter into an agreement, based upon a valuable consideration, whereby the borrower releases the lender from all liability for the charge of usury upon all past transactions, the courts will uphold such a release. But we are not here confronted with a like state of facts that brings defendant within the above rule. The facts in the instant case are that plaintiff and defendant had had a number of transactions involving the loan of money in which usury was charged; that it was the general practice of defendant to take a release from the borrower at the time of making the loan, relieving defendant from liability for usury, and he took such a release from plaintiff in the instant case, and at the same time refused to loan him an additional sum of money until he had executed the release, thereby, in our opinion, holding a club over plaintiff in order to be relieved from past violations of our usury laws. We do not think that a release obtained under the circumstances as disclosed by the record in this case should be upheld. Vose v. U. S. Cities Corporation, 152 Okla. 295, 7 P. (2d) 132, wherein it was held:

"An obligation, once usurious, is always usurious so long as its original existence continues, but an indebtedness tainted with usury may be purged of the usury, and when evidenced by a new, different, and clean instrument, will be enforced by the court."

In Dies v. Bank of Commerce of Sapulpa,

100 Okla. 205, 229 P. 474, and many other subsequent cases, it was held:

"It is the uniform policy of the courts not to permit an act forbidden or penalized by statute to be done either directly or indirectly. This court will not uphold any shift or device by which the lender may receive more than 10 per cent. per annum for the use or forbearance of money."

In Fidelity Securities Corporation v. Brugman, 1 P. (2d) 131, an Oregon case, it was said: -

"The courts do not permit any shift or subterfuge to evade the law against usury. The form into which parties place their transaction is unimportant. Disguises are brushed aside and the law peers behind the innocent appearing cloaks in quest for the truth. Even the parol evidence rule interposes no objection."

Therefore, we must conclude, after a careful examination of the entire record in this case, that the finding of the court that the release in question was a cloak to permit the charging of usury without any liability under our usury statute is fully supported by the law and evidence.

There is no error. No other judgment could have been properly rendered under the admissions of defendant and the facts proved. The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys C. F. Green, J. F. McKeel, and I. M. King in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Green and approved by Mr. McKeel and Mr. King, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and BAYLESS, BUSBY, PHELPS, and GIBSON, JJ., concur.